### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
_____
                              :
UNITED STATES OF AMERICA      :
                              :    No.  1:11-cr-00752-NLH
     v.                       :
                              :
TYREN ALI,                    :    OPINION                    :
                              :
          Defendant.          :
_____:
```

**APPEARANCES**:

TYREN ALI
# 63465-050
SCHUYLKILL
FEDERAL CORRECTIONAL INSTITUTION
INMATE MAIL/PARCELS
P.O. BOX 759
MINERSVILLE, PA 17954

     *Pro Se*

DIANA V. CARRIG
DOJ-USAO-DISTRICT OF NJ
401 MARKET STREET, 4TH FLOOR
P.O. BOX 2098
CAMDEN, NJ 08101

     *Counsel for the United States*


**Hillman**, District Judge

     Before the Court is Tyren Ali's ("Defendant") Motion for

Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).[1]  (ECF 75).  For the reasons expressed below,
Defendant's Motion will be denied.

------

[1]  This is Defendant's first motion for compassionate release
under the First Step Act ("FSA").  18 U.S.C. § 3582(c)(1)(A)(i).
The FSA amended 18 U.S.C. § 3582(c)(1)(A) to allow federal
prisoners a right to petition their sentencing court for a
reduction of sentence under certain limited circumstances, a
power previously exercised only by the Bureau of Prisons.  Prior
to this motion, Defendant sought release to home confinement
under the expanded authority given to the Attorney General by
the Coronavirus Aid, Relief, and Economic Security Act ("CARES
Act") to allow a defendant to serve a portion of their sentence
at home as they transitioned back into the community. 18 U.S.C.
§§ 3621, 3624. (ECF 60).  The Clerk erroneously docketed this
motion as a § 3582(c)(1)(A)(i) compassionate release motion even
though Defendant clearly marked it as a motion seeking relief
under the CARES Act. (ECF 60).  However, unlike an FSA
compassionate release motion, which is a motion for a reduction
of sentencing rather than a change in place of incarceration,
the CARES Act does not allow a prisoner to seek relief from the
sentencing court. United States v. Goldblatt, 2021 WL 287881, at
*2 (D.N.J. Jan. 28, 2021) ("Although the First Step Act [], 18
U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant
compassionate release where there exist 'extraordinary and
compelling reasons' to reduce a sentence, the CARES Act did not
grant the district court the power to order an inmate to home
confinement."); Washington v. Warden Canaan USP, 858 F. App'x
35, 36 (3d Cir. 2021) ("[W]e agree with the District Court that
whether to transfer an inmate to home confinement is a decision
within the exclusive discretion of the BOP.").  Soon after his
CARES Act motion, Defendant also filed a motion under that
provision in the FSA that granted retroactive effect to the Fair
Sentencing Act of 2010 which sought to soften the sharp
differences in sentencing for crack cocaine as compared to
powder cocaine cases. (ECF 61).  As a career offender, however,
Defendant was not entitled to the benefits of that provision of
the FSA codified at 18 U.S.C. § 3582(c)(2) and the motion was
thereafter denied by Order dated November 2, 2020. (ECF 65).  An
appeal followed and after the Court of Appeals sought
clarification on whether the Order was intended to address both
Defendant's CARES Act and FSA motions, Defendant thereafter
withdrew his appeal on the CARES Act issue.  The Court of
Appeals then affirmed this Court's Order denying Defendant
relief under the FSA and § 3582(c)(2).  The instant motion

**Background**

On December 9, 2011, Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 18 U.S.C. §§ 841(a)(1)(A), 841(b)(1)(B), and 846.  (See ECF 36).  Thereafter, on June 25, 2012, this Court sentenced Defendant to a term of imprisonment of 204 months and a 5-year term of supervised release.  (See id.)  (See id.)  Defendant's release date is projected to be December 21, 2025.[2]

Defendant filed his first pro se motion on May 13, 2020, (ECF 60), which the Court denied on November 2, 2020.[3]  (ECF 65).  On June 6, 2022, Defendant filed a second pro se motion for compassionate release (ECF 75) and the Government filed a letter in opposition on July 27, 2022.  (ECF 79).  The Court considers Defendant's motion against this procedural and factual backdrop.

**Legal Standard**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling

---

followed, incorrectly named by the Clerk as Defendant's Second Motion for Compassionate Release when it is actually his first under 18 U.S.C. § 3582(c)(1)(A).

[2] FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited August 1, 2022).

[3] The Third Circuit affirmed this Court's Order on May 10, 2022. (ECF 74).

reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir.
2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a
motion for reduced sentence before the sentencing court,
defendants first "must ask the Bureau of Prisons to do so on
their behalf, give the BOP thirty days to respond, and exhaust
any available administrative appeals." Id.  "Thus, under the
First Step Act, a defendant seeking a reduction in his term of
imprisonment bears the burden of satisfying both that he has (1)
exhausted remedies before seeking judicial review, and (2) that
compelling and extraordinary reasons exist to justify
compassionate release." United States v. Sellers, 2020 WL
1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. §
3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's
sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding
extraordinary and compelling reasons warrant a reduction, that
such a reduction would be consistent with applicable policy
statements issued by the Sentencing Commission and that the
applicable sentencing factors under § 3553(a) warrant a
reduction.  United States v. Pabon, 458 F. Supp. 3d 296, 300
(E.D. Pa. 2020).

4

**Discussion**

**1. Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for release and his request was denied on May 6, 2020. (ECF 63-2). The Government does not contest that Defendant has exhausted his administrative remedies. (ECF 63, 79). Thus, the Court deems that threshold requirement satisfied.

**2. Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that his need to care for his mother who takes multiple medications, has suffered multiple strokes, has Type II diabetes, schizoaffective disorder and rheumatoid arthritis is an extraordinary and compelling reason justifying his release. (ECF 75 at 3-4). Defendant also argues that if sentenced today he would not be subject to a career offender enhancement. (Id. at 4-5). Defendant further contends that his rehabilitation while incarcerated also supports his release, and attaches various educational and self-improvement certificates that he has earned during his incarceration as evidence. (Id. at 5-7). Finally, he argues that the prison environment has not been safe for his health during the pandemic. (Id. at 7).

The Government opposes Defendant's motion and contends that Defendant has not met his burden to show "extraordinary and compelling reasons" justifying his release. They argue that

Defendant has not provided information showing that his mother cannot care for herself or in the alternative that Defendant is the only possible caregiver for her. (ECF 79 at 9). They also argue that despite the fact that Defendant would not be sentenced as a career offender today, the Third Circuit case which defined what constituted predicate crimes for a career offender designation, United States v. Nasir, 17 F.4th 459 (3d Cir. 2021), did not apply retroactively. (ECF 79 at 9-10). The Government lauds Defendant's rehabilitation efforts but states that they alone do not justify Defendant's compassionate release, especially where Defendant's prison record shows infractions for interfering with prisoner count and for possessing alcohol. (Id. at 10-11). The Government finally notes that Defendant has not identified any medical condition that he suffers from that is listed by the Centers for Disease Control and Prevention as associated with an increased risk of adverse outcomes with COVID-19 and that Defendant is fully vaccinated. (Id. at 1, 11). The Government separately underscores the efforts that the BOP has made to curb the spread of the virus, the efficacy of the available vaccines, and the BOP's management of the pandemic to rebut Defendant's proffer of "extraordinary and compelling reasons." (Id. at 4-5).

Defendant does not present "extraordinary and compelling" reasons for his release. The Court takes seriously Defendant's

6

concerns about his mother's health and analyzes whether he has

shown "extraordinary and compelling reasons for his release"

accordingly.  That said, the Court holds that Defendant has not

met that standard.  First, the Court finds instructive, although

not determinative,[4] the current guidance by the Sentencing

Commission as incorporated by § 3582(c).  Defendant has not

pointed to evidence that his mother is incapacitated or that he

is the only available caregiver which would militate toward

release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission

falls under Comment 1 under § 1B1.13 of the guidelines.

U.S.S.G. § 1B1.13, cmt. n.1(C).  According to the Comment,

applicable family circumstances include "[t]he death or

incapacitation of the caregiver of the defendant's minor child

or minor children [or] [t]he incapacitation of the defendant's

spouse or registered partner when the defendant would be the

---

[4]  While the Court looks to § 1B1.13 as directed to by the
statute, it is not, standing alone, a determinative factor in
light of a lack of quorum which has prevented the Sentencing
Commission from updating § 1B1.13 in response to the First Step
Act.  That said, the Third Circuit has approved a district
court's consideration of § 1B1.13 when it comes to evaluating
motions for compassionate release filed by prisoners.  United
States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert.
denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The
court correctly recognized that although the policy statement is
no longer binding, it still sheds light on the meaning of
extraordinary and compelling reasons.").

only available caregiver for the spouse or registered partner."[5]
Id.

Courts in this district have looked to BOP Program
Statement § 5050.50 for guidance on the meaning of
incapacitation and the showing a defendant must make to
demonstrate they are the sole available caregiver.  See United
States v. Doolittle, 2020 WL 4188160, at *3 (D.N.J. July 21,
2020); United States v. Mason, No. 2:17-CR-191 (WJM), 2021 WL
2530781, at *1 n.1 (D.N.J. June 21, 2021).  The Program
Statement makes clear that incapacitation refers to where an
individual "cannot carry on any self-care and is totally
confined to a bed or chair."  Doolittle, 2020 WL 4188160 at *3.
Further, a defendant making such argument has the responsibility
to provide "a statement and verifiable medical documentation
regarding the [family member's] incapacitation, a statement and
letters of documentation that the inmate is the only family
member capable of caring for the [incapacitated family member],
and a statement and documentation regarding the inmate's release
plan."  Id.

---

[5] The provision does not reference the incapacitation of a parent
as a cognizable basis for compassionate release.  The Court need
not reach the issue as the Court determines that Defendant's
mother's condition does not otherwise constitute an
"extraordinary and compelling reason" justifying Defendant's
release.

Defendant has not made such a showing.  Defendant has
provided some scans of medical records for his mother, but he
has not shown that she is completely confined to a bed or chair.
(See ECF 75).  He has only made conclusory statements that she
cannot care for herself.  Doolittle, 2020 WL 4188160 at *3.
("Doolittle has presented no medical documentation or other
competent evidence demonstrating that his wife is incapacitated.
He argues that she has difficulty handling daily tasks on her
own and is desperate for him to return home, but there is no
indication that she is unable to care for herself or that she is
immobile.").

Further, his statement that his cousin is not a long term
solution to his mother's care needs is not backed by any
documentation that this individual will be completely
unavailable and that there is no one else who can care for his
mother.  United States v. Dunich-Kolb, No. CR 14-150 (KM), 2022
WL 580919, at *8 (D.N.J. Feb. 14, 2022) ("One common thread,
whether relief is granted or denied, is the requirement that the
prisoner be the *only* person available to provide care to a
seriously ill relative.") (emphasis in the original).  While the
Court is sympathetic to the difficulty that Defendant's mother's
situation poses for his family it does not rise to the level of
an "extraordinary and compelling reason" justifying release.

As alternative grounds for his motion, Defendant mentions the spread of the virus in prisons and stricter prison conditions during the pandemic.  (ECF 75 at 7).  The Court cannot say that the general risk of COVID-19 in the prison environment fits into the same category as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." U.S.S.G. § 1B1.13, cmt. n.1(A).

It also cannot say that Defendant suffers from conditions that substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover."  Id. Separately, the fact that that Defendant has experienced strict lockdowns because of COVID-19 is not a reason that justifies compassionate release.  United States v. Ranalli, No. 20-3263, 2021 WL 4166293, at *2 (3d Cir. Sept. 14, 2021) (mental health struggles as a result of lockdown were not "extraordinary and compelling reasons" for compassionate release); United States v. Ramos, No. CR 18-0326 (ES), 2021 WL 2660274, at *3 (D.N.J. June 28, 2021) ("In the same vein, to the extent Defendant argues that his mental health conditions worsened from extended lockdown periods in response to COVID-19. . . he does not

10

describe how lockdown or the side effects he experienced from lockdown warrant compassionate release.") (internal citations omitted).

Further, FCI Schuykill, where Defendant is housed, has mitigation efforts at controlling the spread of the coronavirus that appear to be effective.  Currently, FCI Schuykill has 14 active inmate cases and 3 staff positive tests.[6]  Over the course of the pandemic, no inmates have died as a result of infection by COVID-19, and 463 inmates have recovered from positive infections.[7]  Id.

Finally, the fact that a defendant would no longer be considered a career offender if sentenced today is not cognizable as an "extraordinary and compelling reason" for compassionate release.  United States v. Henderson, No. CR 15-0329 (ES), 2022 WL 1617678, at *3 (D.N.J. May 23, 2022) ("Even assuming that Defendant would not be considered a career offender if sentenced post-Nasir, Nasir's nonretroactive interpretation of the career offender enhancement under the Sentencing Guidelines does not constitute extraordinary and compelling circumstances under the FSA."); United States v.

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited August 12, 2022).

[7] Id.

11

Rosario, No. CR 13-95 (NLH), 2022 WL 2063460, at *4 (D.N.J. June 8, 2022).

According to the BOP, 1,180 inmates at FCI Schuykill have been fully vaccinated.[8]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Schuykill weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who has not shown that he is needed to care for his mother or is unable to manage any health conditions at FCI Schuykill, does not present "extraordinary and compelling reasons" supporting his release.  Nor has he shown how he is at an increased risk of adverse health outcomes in the prison environment in light of COVID-19.

### 3. **The 3553(a) Factors Weigh Against Defendant's Favor**

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an

---

[8] Id.

[9] FEDERAL BUREAU OF PRISONS, OUR LOCATIONS, https://www.bop.gov/ locations/list.jsp (last visited August 12, 2022).  The current population of FCI Schuykill is 1,113, which is lower than the figure of 1,180 inoculations that have been completed at the facilities.  It is not clear whether or not this discrepancy is due to inmate transfers or releases.

inmate's sentence only if the applicable sentencing factors
under § 3553(a) warrant a reduction.  Here, they do not.

Again, Defendant principally argues that the fact that he
has served the majority of his prison sentence and his
rehabilitation while in prison support his motion.  (ECF 75 at
5-8).  He also states that he has an offer of employment at a
landscaping company upon his release from prison.  (Id. at 8).
He does not otherwise address how the calculus of the § 3553(a)
factors has changed since his original sentencing.  This
argument does not tilt a full balancing of the § 3553(a) factors
in his favor.

The Government argues the § 3553(a) factors weigh toward
denying Defendant's motion.  They note that he had committed
five prior felony drug offenses at the time he committed the
instant offense.  (ECF 79 at 12).  They further note that for
the entirety of Defendant's career, he worked as a drug dealer
despite the fact that he had a loving family.  (Id.)  They
finally argue that deterrence is an important consideration
militating against Defendant's release especially where
Defendant still has a significant amount of time left on his
sentence.  (Id. at 13).

The Court agrees with the Government and sees no reason to
disturb the sentence that it previously imposed.  First, while
the Court certainly lauds Defendant's rehabilitative efforts, it

13

notes that Defendant committed the underlying offense after already having been convicted of multiple drug offenses. 18 U.S.C. § 3553(a)(1); (ECF 40 at 32: 7-12). At Defendant's sentencing the Court noted the irony and "callousness" that Defendant showed in distributing crack cocaine while at the same time trying to help his mother with her drug addiction. 18 U.S.C. § 3553(a)(1); (ECF 40 at 33: 14-19). The sheer quantity of drugs that Defendant distributed and the length of time for which he was involved in the intricacies of the drug trade in Camden make his offense very serious and a reduction in his sentence would not promote respect for the law or provide just punishment. 18 U.S.C. § 3553(a)(2)(A); (see ECF 40 at 32-33).

Moreover, the fact that Defendant has repeatedly returned to drug dealing despite his prior convictions and the fact that he contributed to the rampant drug crime and abuse in Camden make specific and general deterrence key. 18 U.S.C. § 3553(a)(2)(B); (ECF 40 at 33: 1-19). The need to protect the public from Defendant's recidivist drug dealing also has not diminished since the Court initially sentenced him. 18 U.S.C. § 3553(a)(2)(C). It also appears, based on the courses he has taken thus far, that Defendant has access to educational and personal development programs while in BOP custody, which continue to allow him to pursue rehabilitation while incarcerated. Id. at § 3553(a)(2)(D).

In sum, Defendant's rehabilitation, his mother's health condition, his career offender status and the advent of COVID-19 neither individually, or collectively, demonstrate extraordinary and compelling reasons" justifying his release.  And even if they did, there have been no material differences in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Compassionate Release (ECF 75) will be denied.[10]

An accompanying Order will issue.


Dated: <u>August 14, 2022</u>      <u>s/ Noel L. Hillman</u>
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[10] Implicit in this denial is a denial of Defendant's request for counsel to be appointed.  Defendant is not entitled to counsel on a compassionate release motion, and it would be a waste to appoint counsel where the motion is futile.  <u>United States v. Bess</u>, No. CR 16-522 (SDW), 2021 WL 5277201, at *3 n.6 (D.N.J. Nov. 12, 2021) ("Defendants do not have a constitutional right to appointment of counsel when seeking compassionate relief. Although a district court has the discretion to appoint counsel, where an underlying motion for compassionate release will fail, appointing counsel would be futile.") (internal citations and quotation marks omitted).  Also implicit in this denial is a denial of Defendant's request for a hearing.  Fed. R. Crim. P. 43(b)(4) (stating that defendants are not entitled to be present for a hearing for a motion for correction of sentence under 18 U.S.C. § 3582(c)).